[L. A. No. 16823. In Bank.—December 30, 1938.]

ROSA DELL FECKENSCHER, Respondent, v. LOUIS S. GAMBLE et al., Appellants.

Chambers & Lyman, Robert Chambers, Gordon W. Levoy, A. Edward Nichols and Clarence Stephens Brooks for Appellants.

John Dean Barrick and William B. Etheridge for Respondent.

CURTIS, J.—This is an appeal from a judgment for damages in an action for fraud. The complaint charged fraud and false representations on the part of the defendant inducing the plaintiff to enter upon and consummate an exchange of three parcels of property owned by her in Detroit, Michigan, and Pasadena, California, for a lot at the corner of Third Street and Hobart Avenue in the city of Los Angeles, on which was erected a building consisting of seven stores on the first floor and three apartments of five rooms each on the second floor. The action was tried by the court sitting without a jury, and resulted in a judgment in favor of the plaintiff in the sum of $17,760 against all of the defendants with the exception of Charles Wagner and Ruth Kleeman. Ruth Kleeman, who held title to the property at Third Street and Hobart Avenue, was not served with summons, and did not appear herein. The court found that Charles Wagner was merely an employee of defendant, S. C. Kleeman, acting under his directions, and was not legally liable for the loss suffered by plaintiff. The property which plaintiff received by the exchange transaction had been acquired by S. C. Kleeman, a dealer in real estate and a licensed real estate broker, a few months prior to the transaction involved in the present litigation, and title had been taken in his daughter's name, as he stated, because he owed her some money and desired to protect her. S. C. Kleeman held a power of attorney from his daughter, and conducted

all of the negotiations involved in the transaction, she taking no part in the transaction herein involved. The property owned by plaintiff which was exchanged by her in the deal, consisted of a residence at 1711 East Maple Street, Pasadena, California, which was found by the trial court to be of the value of $2,400, over and above the encumbrance of a trust deed in the amount of $2,000; a brick store building consisting of six stores at Twelfth and Highland Streets, Detroit, Michigan, which was of the value, as found by the trial court, of $5,800, over and above all taxes, indebtedness and encumbrances thereon; and a land contract, similar to a deed of trust, on property located at 74 Hazelwood Avenue, Detroit, Michigan, in the face amount of $7,000, payable at the rate of $50 per month, which was of the reasonable value, as found by the trial court, of $5,500, over and above all encumbrances, taxes and indebtedness. The total market value of the property owned by plaintiff was, therefore, the sum of $13,700. The property at Third Street and Hobart Avenue, which had been acquired by Kleeman on an exchange transaction was stated by him to be worth $40,000, subject to a trust deed in the sum of $25,500, street bonds in the sum of $1,023, payable $200 per year, and a balance of $330 on the refrigerator equipment. This property which had been built in 1917 and had been remodeled in 1931, contained market fixtures and equipment represented to be worth $7,000.

Defendant Gamble was the president of Parker & Gamble, Ltd., a real estate firm, and personally participated in the carrying through of the exchange transaction. Defendant Pringle was a salesman in the employ of Parker & Gamble, Ltd., and also actively participated in the negotiations during the course of the exchange transaction. The plaintiff, Mrs. Feckenscher, a widow, was a client of the firm of Parker & Gamble, Ltd., Mr. Gamble having acted in real estate transactions for her and her husband during her husband's lifetime.

The deal originated in the furnishing by Kleeman to a number of real estate brokers, including defendant, Parker & Gamble, Ltd., of a set-up or prospectus of the Third Street and Hobart Avenue property, setting forth the income derived from said property, the expenses, showing a net income of $231 a month above expenses, the trust deed of $25,000, 1 year at 7 per cent, and containing the statement, ''all fixtures in the market are the property of the building''. Upon receipt

of this set-up from Kleeman, an almost identical set-up on the stationery of Parker & Gamble was prepared, and Gamble presented to plaintiff a proposition for the exchange of plaintiff's properties for the Third Street and Hobart Avenue property, representing to her that it was a wonderful deal, that it would bring in at the very lowest possible figure, $125 per month, and that if she could acquire this property in exchange, "she would be on Easy Street".

Plaintiff, who previous to her marriage had been a musician and singer, was wholly unversed in business matters and had practically no knowledge of the intricacies of real estate deals. She placed herself entirely in Mr. Gamble's hands, informing him that she knew nothing about business but that she was willing to rely upon his honesty and business judgment in the matter. She followed without question or suspicion the advice and counsel given to her by Mr. Gamble and on his advice and persuasion signed the papers and documents presented by him or Mr. Pringle without reading them. During the course of the transaction, the terms of the deal were frequently changed, always to the disadvantage of Mrs. Feckenscher, and upon the continued representation by the real estate firm that it was a wonderful deal and that she would be lucky if she could secure the Third Street and Hobart Avenue property. A written exchange agreement was entered into on March 21, 1935, in which the property held by Kleeman was stated to be subject to a trust deed of $25,500 at 7 per cent, due March, 1938. By this agreement, plaintiff agreed to exchange two pieces of property in Pasadena and the land contract in Michigan, omitting the store property in Michigan. This agreement, as well as the subsequent agreements, contained the provision that Parker & Gamble, Ltd., was authorized to act as agents for both parties and to accept a commission from each of them. A commission of $750 to be paid by Kleeman, and a commission of $750 to be paid by plaintiff was separately agreed upon by both parties. On March 23, 1935, another exchange agreement was entered into, in which the store property in Michigan was substituted for the two pieces of Pasadena property on the part of the plaintiff, and which contained the same statement on the part of Kleeman that the Third Street and Hobart Avenue property was subject to an encumbrance of a trust deed for $25,500, at 7 per cent, due March, 1938. On March 29, 1935, another exchange agreement was entered into be-

tween the parties. In this agreement, plaintiff agreed to exchange for the Third Street and Hobart Avenue property, the properties hereinbefore described, namely, the 1711 East Maple Street property in Pasadena, the brick store property at the corner of Twelfth Avenue and Highland Street in Detroit, Michigan, and the land contract on the property located at 74 Hazelwood Avenue, Detroit, Michigan. This exchange agreement contained the same statement as the former agreements with reference to the trust deed on the Third Street and Hobart Avenue property, that it was in the amount of $25,500, rate of interest 7 per cent, due March, 1938. The transaction was then put in escrow. In the first escrow instructions, dated April 4, 1935, Kleeman agreed to deliver seven leases on the stores in the building at Third Street and Hobart Avenue. Mrs. Feckenscher had no idea of the status of her Detroit property, and she had previously so informed Mr. Gamble who had told her he would investigate. Either before this last exchange agreement or shortly thereafter word was received from Detroit that the financial status of the property of the plaintiff in Detroit was not as good as had been contemplated by the defendants. It appeared that the amount due on the land contract was $6,425, rather than $7,000, that there were taxes due on the store property of some $1200, and that this property which was subject to an encumbrance of $1,000 was in the process of being foreclosed with six or seven more months to go. Upon Kleeman's insistence, considerable modifications were made in the escrow instructions, the plaintiff signing them without reading them upon the assurance that this was advisable, and after being informed by Mr. Pringle that she would not understand them if she did. By these new instructions, plaintiff agreed to accept the Third Street and Hobart Avenue property, subject to the encumbrance of $25,510, to be payable at $200 per month, interest at 8 per cent, and due February, 1936, provided the monthly payments of $200 were kept up. She also agreed to accept instead of the seven leases on the stores located on the property received by her, three of said leases. She also authorized Kleeman to go back to Detroit and sell her properties there at whatever price he could receive for them. This he did, making a sacrifice sale of the properties, and depositing the money in escrow. The final modifications of the escrow instructions were made on April 22, 1935, and the escrow was closed on July 16, 1935. Previous to the

close of the escrow Kleeman withdrew from the escrow the sum of $1,000 to clear up a lien which appeared in the title to the Third Street and Hobart Avenue property. After Mrs. Feckenscher received title to the Third Street and Hobart Avenue property, the income therefrom failed to measure up to the income set forth in the set-up and prospectus, and she was unable to keep up the payment of $200 on the encumbrance. She also discovered that the fixtures in the building were subject to the encumbrance as additional securities and that the rents also had been assigned as additional securities. Having no other independent means to meet this obligation, and being refused a Reconstruction Finance Corporation loan of $26,000 on the ground that the security offered was insufficient and the income not sufficient to meet all the necessary expenses of taxes, interest, amortization, etc., on the loan, plaintiff was unable to prevent the loss of the property, and on November 29, 1935, the holder of said trust deed caused a declaration of default and election to sell under the terms of the trust deed to be recorded. The property was sold pursuant thereto by the trustee on April 7, 1936. After the completion of the transaction in which the plaintiff had lost her entire capital, Mr. Gamble called upon her to urge her to bring suit against Kleeman, claiming that he had accepted the representations of Kleeman as true and that Kleeman was responsible. Kleeman placed the blame upon Gamble claiming that he had failed to properly represent her, and informing her that she should have known better than to go into the deal since neither he nor Gamble wanted the property, and ending with the statement, ''We handed you a lemon.'' Plaintiff thereafter consulted her attorney and commenced this action, naming as defendants all those who had participated in the transaction, and including Ruth Kleeman as title holder of the property. As before noted, judgment went against all the defendants with the exception of Ruth Kleeman and Charles Wagner.

The main defense of defendants at the time of the trial was that the representations claimed by plaintiff to be false and fraudulent were in the main true, and that if some of the original representations were not true, yet the plaintiff, after the inception of the original deal, thereafter willingly entered into new contracts based upon later representations which were true. They claim that they honestly believed

the truth of the representations made to plaintiff, and cannot, therefore, be held liable for fraud and deceit. Defendant Kleeman claimed that he personally made no representations to plaintiff and that Parker & Gamble, Ltd., real estate broker, although designated as his agent in the three separate exchange agreements, nevertheless was an agent simply to accept a commission for the attending to the details of the transaction and was not authorized to make any representations to the plaintiff, and that he cannot be held liable as principal by virtue of any misrepresentations made to plaintiff by said real estate firm which induced her to enter into the exchange transaction which culminated in the loss of her entire capital.

Upon appeal, appellants challenge the sufficiency of the evidence to support the finding of the trial court to the effect that the statements made by defendants to plaintiff were false, and known by the defendants to be false, and insist that the evidence shows that such statements were true. We cannot agree with this contention. Having in mind the general rule that all intendments are in favor of the judgment and that this court must accept as true all evidence tending to establish the correctness of the findings as made, taking into account as well all inferences which might reasonably have been thought by the trial court to lead to the same conclusion, we are satisfied that there is sufficient evidence to uphold the conclusions of the trial court.

Having in mind also the rule that one false representation of a material fact is sufficient either for an action for rescission of contract or to sustain an action for damages for fraud, provided the representations be such that the court can say that without it the contract would not have been entered into, we shall discuss very briefly the misrepresentations alleged, and the evidence upon which the trial court was justified in finding that the representations were falsely and fraudulently made. There is no denial that the representation was made to the plaintiff by Pringle that the Third Street and Hobart Avenue property was worth $40,000. There is in the record the testimony of two unusually well qualified real estate experts, one of whom testified that the total value of said property was $25,000 and the other that it was $26,000. We feel that the trial

court in view of the discrepancy of $14,000 or $15,000, and in view of the extended experience of all of the defendants as real estate dealers and brokers was justified in concluding that the defendants could not honestly have believed that the property was of the reasonable value of $40,000 when the representation that it was worth this amount was made to the plaintiff. The fact that Kleeman placed that arbitrary valuation upon it, after having received it in an exchange agreement, likewise does not prove conclusively that either he or Parker & Gamble, Ltd., believed this to be the true valuation. Had he paid this amount in cash, such evidence would have been entitled to more weight. This conclusion as to the state of mind of the defendant Kleeman relative to the value of the property is fortified by plaintiff's testimony of the statement by Kleeman that, "We handed you a lemon."

The same reasoning applies to the representation as to the value of the fixtures which were represented to the plaintiff as being of the reasonable value of $7,000 and Pringle's statement that he could go out any day and sell them for that price. The trial court found on the evidence of an expert witness that the reasonable value of said fixtures was $3,240. Moreover, these fixtures were subject to the encumbrance upon the real property as a whole in the sum of $25,500, which fact was unknown to the plaintiff and was not brought to her knowledge, with the result that she was unable to salvage anything from the fixtures, but lost them with the real property. The statement in the set-up that "all fixtures in the market are the property of the building", was no notice to the plaintiff who was a layman with reference to legal rules, that said fixtures were subject to the encumbrance on the building. Moreover, the fact that the fixtures were transferred by a bill of sale would tend to negative the idea that they were real property and lead the plaintiff to believe that they were not subject to the encumbrance on the building. Pringle's statement that he could go out and sell them for $7,000, may have been quite a strong inducement for her to consider the exchange transaction a desirable one.

With reference to the trust deed and the representation that it was not due until March, 1938, although it was then past due and no absolute extension had been secured,

defendants rely upon the fact that Kleeman was released from the furnishing of the three-year extension by subsequent modifications of the escrow instructions. Defendants claim that this modification was made necessary by the fact that the plaintiff's Michigan property turned out not to be as desirable as had been contemplated at the beginning of the deal. Had plaintiff been an astute business woman who realized the effect of granting such a modification, and had defendants been dealing at arm's length when they secured such a concession, they might have been justified in carrying through the deal on the revised basis. However, in view of the plaintiff's woeful ignorance of business practices, and in view of the fact that she was without other means to meet the obligation of the $25,500 encumbrance as it became due, it is patent that defendants, in securing the modification from plaintiff who acted blindly, relying on the honesty and integrity of her agents, acted solely for their own interests and in utter disregard of the interests of the plaintiff. ■ It is intimated that the consideration for such modification was the detriment suffered by Kleeman by the discovery that the Michigan property of the plaintiff was not as valuable as at first contemplated. An analysis of the three exchange agreements shows that in the third exchange agreement the addition of the East Maple Street property in Pasadena, if not made to take care of the depreciated value of the Michigan properties of the plaintiff, was gratuitously made for the benefit of Kleeman. The value of this East Maple Street property would have been sufficient to have enabled Kleeman to have made a down payment of $2,000 on the encumbrance of $25,500, and to have secured the three-year extension called for originally. The representations with reference to the Michigan property were not made by plaintiff personally and she was not responsible for the misunderstanding as to their value. It is apparent that the defendants simply arranged the deal to their own satisfaction and upon their own terms, using the fact that the value of the Michigan property turned out to be less than originally contemplated as an excuse for so doing.

■ It may possibly be true that the representation that the property at Third Street and Hobart Avenue was bringing in a net income of $231 per month at the beginning of the deal was not false, but even before the close of the trans-

action, the income failed to attain that amount. In any event, defendants knew at the inception of the deal and at the times these representations were made, that a large, modern market with adequate parking facilities was very soon to be erected at the corner of Third Street and Oxford Avenue, which location was but a short distance from the property which plaintiff received in exchange for her property, and that the erection of such modern market would be detrimental both to the value and to the rental income to be derived from said property. As the property received by plaintiff in exchange was not modern, but was obsolete without any parking facilities except at the curb of the street, the failure of the defendants to bring this knowledge home to plaintiff and their representation to her that the property would continue to bring in an income of at least $125 a month, showed a complete disregard of their duty to properly represent her.

 Some point is made by defendants that the plaintiff did not in fact rely upon the representations made to her by Gamble and Pringle, but that she had the independent advice of her lawyer and banker. It is undisputed that the lawyer whom she consulted refused to give her any advice as to the desirability of the deal and even refused to advise her as to the form of the contract of exchange furnished by Parker & Gamble, Ltd., upon the ground that the deal was being put through in too big a hurry and that he could not advise her even as to the form of the contract unless he had time to go over the contract. Her banker likewise refused to give her any advice and suggested to her that since she relied upon Mr. Gamble she should follow his advice. Neither can it be said, we think, that because she visited the market after the signing of the third exchange agreement but before the final completion of the escrow she was not entitled to hold defendants liable for any of their misrepresentations. When she called the attention of Mr. Gamble to the fact that the building did not appear to her to be new, she having been told that it was only three years old, she was reassured by Mr. Gamble as to the condition of the building. We find nothing in the record in this regard which relieved the defendants from their duty of exercising the highest good faith in their dealings with the plaintiff.

■ We also fail to find any real justification for the claim of defendants that plaintiff herself admitted that she had been advised by Gamble to withdraw from the deal and accept the money in escrow which had been obtained by the sacrifice sale of her property. There is one ambiguous sentence in her testimony which if taken from its context is susceptible of such inference. But taken in conjunction with her entire testimony on this phase of the situation, we think the trial court was well justified in resolving the ambiguity against such interpretation.

■ We are of the opinion in determining the question of whether misrepresentations were in fact made to plaintiff that considerable weight should be given to plaintiff's admitted ignorance of business matters, and her total inexperience in business deals, a fact well known to the real estate agents. It is apparent on the face of the record that throughout the entire transaction she acted simply as an automaton under the direction of the defendant Gamble, signing at his behest without reading them, the separate exchange agreement and the continuous modifications of the escrow instructions. The misrepresentations of the defendant real estate agents consisted not only of the statements with reference to the individual factors making up the deal, such as the value of the property, the value of the fixtures, the due date of the trust deed, but also in the glowing description as to the advantage of the deal and what it would do financially for the plaintiff. Throughout the transaction it was reiterated to her that it was a wonderful deal, that she would be lucky if it went through, that if it did her worries would be over, and she "would be on Easy Street". In view of the fact that the plaintiff frankly confessed her business ignorance to the real estate firm, and let them know that she was relying on their sound advice and business acumen to protect her from her own ignorance, such statements were in fact actual misrepresentations. ■ The fact that a shrewd business man would not have relied upon such statements, did not justify them in making them to a trusting client, nor relieve them from liability for so doing. As has been said, "That plaintiff is too credulous is not generally a defense. 'The test of the representation is its actual effect on the particular mind, whether it is a strong and circum-

spect mind, or one weak and too relying.' " (*Neff* v. *Engler*, 205 Cal. 484, 489 [271 Pac. 744].)

It should also be borne in mind that while the deal was made up of a series of contracts, consisting of three exchange agreements and numerous escrow instructions, plaintiff did not waive the fraud of the original representations by entering into the later contracts by reason of the fact that during the entire course of the transaction she remained unaware of the fraud which was being perpetrated upon her. Had she become aware of the false and fraudulent representations during the course of the negotiations, and thereafter with this knowledge have entered into a subsequent contract, she could not thereafter complain of the original fraud, but in the instant case, plaintiff relied so blindly and confidently upon the good faith of the real estate firm which was acting as her agent, that it was not until the completion of the transaction when she was informed by Mr. Gamble that there was no money coming to her as income from the Third Street and Hobart Avenue property, that she woke up to the true state of affairs and found in the language of the trial judge, that "she had been taken to the cleaners".

It is apparent from the foregoing discussion that the findings with reference to the real estate firm of Parker & Gamble, Ltd., and the individual defendants, Gamble and Pringle, were sufficiently supported by the evidence.

The evidence with reference to Kleeman requires separate consideration by reason of the fact that he did not meet or talk with plaintiff until after the completion of the deal. He earnestly contends that he himself was a licensed real estate broker, having no need of the services of any other real estate broker; and that Parker & Gamble, Ltd., was not his agent. However, we think there was sufficient evidence for the trial court to arrive at the conclusion embodied in the findings to the effect that, "at all the times mentioned herein the defendant, Parker & Gamble, Ltd., as a real estate broker, and Louis S. Gamble and William Pringle, as the agents, servants and employees of said corporation defendant, Parker & Gamble, Ltd., and also in their individual capacity were the duly authorized and acting agents and representatives of the defendant, S. C. Kleeman, and at all of the times and

498

under all of the circumstances mentioned herein were acting and did act within the scope of and in pursuance of their said employment and authority with respect to the defendant, S. C. Kleeman''. In the first place there is the written exchange agreements wherein Parker & Gamble, Ltd., is designated as the agents of both parties. There is the fact that Kleeman listed the property with Parker & Gamble, Ltd., prior to the time Gamble solicited plaintiff to make the exchange. There is the fact that a commission of $715 was actually paid by Kleeman to said firm. There is also the statement of Kleeman to the plaintiff that, ''We handed you a lemon.'' This being so, the representations of the firm of Parker & Gamble, Ltd., and Gamble and Pringle were the representations of Kleeman and he having secured the fruits of the fraud, is liable for the damages suffered by plaintiff by reason of said false and fraudulent representations.

The defendants make the further contention that by reason of the fact that the trial judge upon the motion for a nonsuit made by them at the trial, analyzed the evidence setting forth in some detail his reactions thereto, after which he denied the motion for a nonsuit as to all of the defendants, they were misled to their detriment and failed to introduce in evidence pertinent testimony which would have disproved the contentions of plaintiff. We are unable to conceive how attorneys for the defendants could have confidently relied upon such analysis of the evidence in view of the trial judge's denial of their motion for a nonsuit. This denial should have been sufficient to put them on notice that evidence offered by plaintiff required rebuttal, and no prejudicial error can be predicated upon their unjustified reliance as to the state of mind of the trial judge.

The attorneys for defendant Kleeman specifically claim that much of the evidence introduced by plaintiff, and particularly that of the expert witnesses relative to the value of the various properties, was objected to and the objection sustained, and therefore, there is not in the record as to defendant Kleeman sufficient evidence to support the judgment. The objection to the introduction of evidence was sustained with the express provision that if the relation of agency on the part of the defendant, Parker & Gamble, Ltd.,

for the defendant Kleeman should be established, the evidence which had been excluded as to defendant Kleeman could be reoffered without the recalling of the witnesses. Subsequently the attorney for the plaintiff made the motion to introduce all the excluded evidence, as well as all the papers and documents previously offered. The court refused to grant the blanket motion as to the papers and documents, and did not specifically grant the motion as to the excluded testimony. It is, however, obvious, that the objection as to the absence from the record of the excluded evidence is a purely technical one, and that had the attention of the trial judge been called to the discrepancy, he would have remedied the situation. Under these circumstances we do not feel justified in reversing the judgment as to defendant Kleeman upon such a pretext.

 Objection is further made by the defendants as to the measure of damages applied by the trial judge in arriving at the judgment. The judgment of $17,760 represents the difference between the actual value of the Third Street and Hobart Avenue property and the fixtures as found by the trial court, and the valuation of $40,000 for the real estate and the $7,000 value of the fixtures as represented. After the completion of the transaction and before the trial of the case, the measure of damages was changed by the legislature by an amendment and the new measure was in effect at the date of the trial. The case of *Tulley* v. *Tranor*, 53 Cal. 274, holds unequivocally that no one has a vested right in a measure of damages. The court there said: "We can conceive of no principle of constitutional law which is violated by a *change* in this rule, unless, at least, the new rule on its face deprives the party of every reasonable method of securing just compensation. No case has been referred to in which it has been held that to change an arbitrary and statutory rule of damages in cases of tort was a deprivation of any vested right of one who had previously suffered the wrong, and we can see no reason why it should be so held, even if it should be made to appear in a particular case that the plaintiff would not recover as much as he would have done had the former rule been continued." While this is an early case, decided in 1878, the U. S. District Court, Southern Division, Northern District, in the case of *United States* v.

*Standard Oil Company of California,* 21 Fed. Supp. 645, has recently quoted said rule with approval.

The second paragraph of section 3343 of the Civil Code, which is the measure of damages in the instant case, cannot in our opinion, be legitimately interpreted as requiring the application of the measure of damages in existence at the time of the accrual of the cause of action.

The measure of damages set forth in section 3343 of the Civil Code is as follows: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction." The reasonable value of plaintiff's property which was transferred by her in exchange for the Third Street and Hobart Avenue property was $13,700. Although there was some equity in the property which plaintiff acquired in the trade at the time she actually acquired it, yet by reason of one of the misrepresentations made to her to the effect that the trust deed was not immediately due, she lost the entire property by a sale under the trust deed, so that it can reasonably be said that she actually received nothing of value from the transaction. The damages suffered by the plaintiff, therefore, in our opinion, can readily be computed at the sum of $13,700 and we hereby find that plaintiff suffered damage in that amount.

The judgment is therefore modified by striking therefrom the following portion thereof: "Rosa Dell Feckenscher do have and recover from the defendants, Louis S. Gamble, William Pringle, Parker & Gamble, Ltd., a corporation, and S. C. Kleeman, and each of them the sum of Seventeen Thousand, Seven Hundred and Sixty Dollars ($17,760.00)" and inserting in lieu thereof the following: "Rosa Dell Feckenscher do have and recover from the defendants, Louis S. Gamble, William Pringle, Parker & Gamble, Ltd., a corporation, and S. C. Kleeman, and each of them the sum of Thirteen Thousand, Seven Hundred Dollars ($13,700.00)," and as so modified said judgment is affirmed. Appellants and respondent each to bear their own costs on appeal.

Shenk, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.