[Civ. No. 20477. Second Dist., Div. Three. Oct. 18, 1955.]

RICHARD J. BICE et al., Appellants, v. JAMES STEVENS et al., Respondents.

Philip E. Poppler and Glen A. Duke for Appellants.

Reynolds, Painter & Cherniss, Howard Painter and Louis Miller for Respondents Stevens et al.

Walker & Horn and M. W. Horn for Respondent Farmers & Merchants Bank.

ASHBURN, J. pro tem.*—Plaintiffs Richard J. Bice and Leila M Bice, appeal from a judgment for defendants rendered pursuant to an order granting defendants' motion to exclude all evidence, followed by a denial of plaintiffs' motion to amend to cure the alleged defects in their complaint.

The complaint is captioned "RE[s]CISSION — DAMAGES — INJUNCTION." It alleges fraud in an exchange of plaintiffs' Glendora property known as the Daniel B. Motel for certain Ocean Boulevard property in Long Beach which the defendants James Stevens and Mabel Stevens claimed to own and which they did acquire and convey to plaintiffs. Defendants Thompson, Morrison and Hoagland were sued as real estate brokers representing the Stevenses and making the alleged false representations. Defendant Farmers and Merchants Bank of Long Beach was sued as escrow holder alleged to be guilty of negligence, not fraud. The issues as to the bank require separate discussion. Those relative to the Stevenses

---

*Assigned by Chairman of Judicial Council.

and the brokers turn upon the same legal proposition and will be considered together.

The complaint alleges that plaintiffs were owners of the Daniel B. Motel and were induced to exchange it for the Ocean Boulevard property through false representations made by or on behalf of each of the defendants other than the bank; that this was accomplished through an escrow at defendant bank. All of the elements of deceit are alleged; also that plaintiffs learned before close of escrow of the falsity of representations made to them and gave notice of rescission prior to occurrence of that event; that after service thereof and before suit defendants Stevens sold the motel and that they thereby made it impossible to bring about a rescission and restoration of the positions occupied by the respective parties before the close of escrow. Then follows an allegation that the Long Beach property would have been worth $180,000 if the representations had been true, but in fact same had a value of no more than $100,000; that plaintiffs had been damaged in a sum not less than $80,000, for which sum they prayed judgment together with further and other relief. The complaint was plainly drawn upon the theory that plaintiffs had a right of rescission which they had exercised, but that same had been rendered fruitless by defendants' conveyance of the motel to third persons, and that therefore they were entitled to the alternative remedy of damages. But the complaint did not allege the value of plaintiffs' motel, and counsel for defendants moved to exclude evidence upon the ground that plaintiffs' allegation of damages based on loss of the bargain was incorrect, that section 3343, Civil Code,[1] prescribes out-of-pocket loss as the exclusive measure of damages and absence of any such allegation rendered the complaint fatally defective. Counsel relied upon *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 759-762 [192 P.2d 935], and *Oliver* v. *Benton*, 92 Cal.App.2d 853, 855 [208 P.2d 375], as establishing out-of-pocket loss as the exclusive measure of damages in an action for damages for deceit, and they do so hold. There were also cited certain authorities to the effect that

---

[1] "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.

"Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

it is necessary to plead the precise amount of such damage. Counsel for plaintiffs met that argument with quotation from *Warfield* v. *Basso,* 62 Cal.App. 47 [216 P. 48], to the effect that a complaint which shows that plaintiff is entitled to damages of some sort is not fatally defective because the pleader has mistaken the rule by which the damages are to be determined. In the present case the court observed that the complaint did not show that plaintiffs were entitled to any damages, emphasizing the fact that there was no allegation of the value of the motel. Thereupon plaintiffs' attorney requested a recess and at its conclusion remarked that the complaint as drafted contemplated a rescission and prayed for rescission and damages, but it probably would have been better if damages in accordance with section 3343, Civil Code, had been stated; referring again to *Warfield* v. *Basso, supra,* he moved to amend the complaint by alleging that the value of the motel was $110,000, and the equity therein $40,000. The complaint showed that the Long Beach property, worth $100,000, was encumbered by two trust deeds aggregating $94,800. Counsel also offered other amendments which are copied in the margin[2] and which were based on *Feckenscher* v. *Gamble,* 12 Cal.2d 482, 500 [85 P.2d 885]. The court said that "there isn't even a remote shadow of a doubt that the objection made by the defendants is well taken, that the complaint does not state a cause of action, for the simple reason that no damages have been alleged" and granted the motion to exclude evidence. The matter of amendment was then discussed and leave was denied for reasons which will be mentioned later.

Concerning the nature of a motion to exclude evi-

[2]The complaint alleged a representation that the second trust deed on the Long Beach property was payable at the rate of $5,000 per annum with first payment due on July 1, 1950, and that in fact the sum of $5,000 was payable semi-annually, the next one being due on September 9, 1949. The proffered amendments were these: " 'That if the representations and warranties made by the defendants as aforesaid were true, that said property would reasonably have been worth the sum of $180,000, and that the payments on the aforementioned second trust deed were in fact due on July 1, 1950, plaintiffs would have been able to maintain said payments and would have been able to have readily sold said property at the reasonable market value which defendants alleged said property to have.' " . . .

" 'That as a direct and proximate result of the false and fraudulent representations as aforesaid, the said plaintiffs were foreclosed of any and all rights to the Long Beach property by foreclosure sale, and that plaintiffs herein suffered loss, injury and damage, in that they have lost their equity in the aforementioned Daniel B. Motel, which plaintiffs allege to be worth the sum of $90,000.' " (Later corrected to $40,000.)

dence, more properly known as an objection to introduction of evidence, this court said in *Miller* v. *McLaglen*, 82 Cal. App.2d 219, 223 [186 P.2d 48]: "An objection to the introduction of any evidence on the ground that a complaint fails to state a cause of action is in the nature of a general demurrer to the complaint or a motion by a defendant for judgment on the pleadings. [Citing cases.] ▆ An objection by a defendant to the introduction of any evidence may only be sustained where the complaint fails to state a cause of action, and that is the sole question presented to the court. [Citing cases.] ▆ Upon such an objection the allegations of the complaint must be accepted as true for the purposes of the objection. [Citing cases.] ▆ Such an objection by a defendant will only lie where the admitted averments of the complaint justify a judgment for the defendant, i.e., where no material issue is joined which it is necessary to prove. (21 Cal.Jur. 234, § 163.) Nothing dehors the complaint may be considered. No defense set up in the answer may be considered. The truth of the allegations of the complaint must be assumed. If the complaint states a cause of action the objection must be overruled. [Citing cases.]"

Appellants now insist that the ruling excluding evidence was erroneous even if the action be considered one at law (which they do not concede), because the complaint shows the fact of damage and an averment of the wrong measure is not fatal to statement of a cause of action; that that goes to the remedy and not the right of recovery. This is the established rule. ▆ Facts must be alleged which show the existence of damage (*King* v. *Mortimer*, 37 Cal.2d 430, 436 [233 P.2d 4]), but if that is done and a prayer for a specific sum inserted in the pleading it is sufficient even though there is no specific allegation of damage in any stated sum, or if the pleading states facts invoking a wrong measure of recovery. Referring to a claim that a complaint was defective for failure to meet the requirement of section 3343, the court in *Sutter* v. *General Petroleum Corp.*, 28 Cal.2d 525, 534 [170 P.2d 898, 167 A.L.R. 271], said: "Certainly it cannot be doubted that there is a sufficient showing of injury to plaintiffs. Whether the precise and correct measure of damages was pleaded is not important in the face of a general demurrer." *Warfield* v. *Basso, supra*, 62 Cal.App. 47, 49: "In support of the judgment, one of the objections which is urged against the complaint is that the damages claimed therein are not such as are provided by the statutes

covering a transaction of the nature outlined in the complaint; but the rule of law is that where the facts stated in the complaint show that the plaintiff is entitled to damages of some sort, it is not a fatal error that the pleader has mistaken the rule by which such damages should be determined." *W. C. Cook & Co.* v. *White Truck etc. Co.*, 124 Cal.App. 721, 726 [13 P.2d 549]: "If respondent is entitled to recover, the fact that he seeks damages according to the wrong measure is inconsequential and does not preclude the court from according him the damages to which he is entitled according to their true measure." ▮ Numerous cases exemplifying this rule are collected in *Eatwell* v. *Beck,* 41 Cal.2d 128, 136 [257 P.2d 643], where it is said: "Our conclusion that the amendment should have been allowed is in accord with the general rule that where 'the facts stated in the complaint show that the plaintiff is entitled to damages of some sort, it is not a fatal error that the pleader has mistaken the rule by which such damages should be determined.' (*Warfield* v. *Basso* (1923), 62 Cal.App. 47, 49 [216 P. 48]; see, also, *Gallagher* v. *California Pac. T. & T. Co.* (1936), 13 Cal.App. 2d 482, 486 [157 P.2d 195]; *Bonde* v. *Bishop* (1952), 112 Cal.App.2d 1, 5 [245 P.2d 617]; *Barr* v. *Southern Calif. Edison Co.* (1914), 24 Cal.App. 22, 25 [140 P. 47]; *Riser* v. *Walton* (1889), 78 Cal. 490 [21 P. 362]; *Sutter* v. *General Petroleum Corp.* (1946), 28 Cal.2d 525, 532-533 [170 P.2d 898, 167 A.L.R. 271].)" And it was there held error to refuse leave to amend where plaintiff in a fraud case had alleged items of nonrecoverable damage and sought upon motion for nonsuit to amend to conform to section 3343. To the effect that failure to plead according to the correct rule of damages is not fatal see also *Hartzell* v. *Myall,* 115 Cal. App.2d 670, 677 [252 P.2d 676]; *Breakers Holding Co.* v. *Josebra Co.,* 122 Cal.App.2d 741, 747-748 [265 P.2d 938]; 23 California Jurisprudence 2d, section 71, page 176; 2 Witkin on California Procedure, section 475, page 1461; 15 American Jurisprudence, section 310, page 752.

The complaint at bar did show imperfectly the fact of damage. The buildings on the Ocean Boulevard property were represented to have been erected at a cost of $350,000, whereas they cost only $75,000; the property was stated to have been bought for $180,000, but was in fact being acquired contemporaneously by defendant for $100,000 and was worth no more than that sum; the furnishings (included in the exchange) were represented to have a market value of $20,000

but were worth not over $11,500; plaintiffs were told that the property had yielded net income of $2,254 for April, 1949; $4,035 for May, 1949, and $4,550 for June, 1949 (the exchange escrow was opened on July 7, 1949) but in fact it was operated at a loss in each of those months; also that the property was zoned for business and usable for sale of liquor but that representation was untrue. That allegations such as these tend "at least inferentially to show that the actual value of the property purchased was less than the price paid" is recognized in the Eatwell case. At page 134 it is said: "As contended by [plaintiffs], they had already introduced evidence tending to show certain elements which go toward the ascertainment of 'actual' or 'market' value of the motel. (See p. 754 of *Bagdasarian* v. *Gragnon, supra.*) For example, there was evidence that during the four months just prior to plaintiffs' purchase of the property the income therefrom 'would average between $300.00 and $450.00, actually $438.00 per month . . . never . . . any more than $438.00.' Also, plaintiff Mrs. Eatwell testified that 'As far as income was concerned I don't think it was worth a dime.'

"It has been held that although 'Anticipated revenue from the property is not "additional damage" within the meaning of section 3343 . . . It is an element to be considered in determining the actual value of the property . . .' (*Oliver* v. *Benton* (1949), 92 Cal.App.2d 853, 856 [208 P.2d 375].) There was also evidence that defendants Thomas, from whom plaintiffs purchased the motel for $43,000 on October 19, 1948, had themselves purchased it only the previous day (October 18, 1948), for the sum of $40,000. Evidence of 'sales of the *identical* property in question, whether realty or personalty' is also a proper indicium of value. (*Bagdasarian* v. *Gragnon* (1948), *supra,* 31 Cal.2d 744, 758.)" At page 136: "By the complaint on file it is clear that plaintiffs were attempting to state a cause of action for damages for fraud. Their allegations as to the fact and substance of the fraud, and their reliance on it to their actual detriment, were adequate. They did not specifically allege damages under the theory and method of computation authorized by section 3343 but even under the limitations held to be imposed by that section the facts alleged tended at least inferentially to show that the actual value of the property purchased was less than the price paid. The defendants do not appear to have been misled or in anywise prejudiced by the failure of

the plaintiffs to have earlier pleaded the more specific facts. Under these circumstances, and in accordance with the rule that amendments shall be liberally allowed in the interests of justice, we are satisfied that plaintiff's request for leave to amend in the particulars noted should have been granted." *Hefferan* v. *Freebairn,* 34 Cal.2d 715, 721 [214 P.2d 386] : "It is obvious that receiving a business earning less than $10,000 a year constitutes a substantial injury to a buyer to whom it was represented as earning $20,000."

The foregoing discussion proceeds upon the assumption that this is an action at law, which was the basis of the exchange of views between counsel and court. But appellants now argue further that the complaint sounds in rescission, belongs on the equity side, and that therefore the rule of section 3343 is inapplicable. There is considerable ground for this contention. It is unnecessary for us to decide this question, for, whether the action is one at law for damages or one in equity to adjudge the effectiveness of plaintiffs' unilateral rescission, it was error to grant the motion to exclude evidence.

Counsel for defendants contend, however, that the court has broad discretion in the matter of allowing amendments presented for the first time at the trial and that there was no abuse of that discretion in denying leave to amend in this case. The proffered amendments would have cured the defect which the court deemed to exist in that they showed an equity of $40,000 belonging to plaintiffs had been exchanged for one of $16,700, thus working damage of $23,300.[3] Defense counsel claimed that this would inject a new issue which they were not prepared to meet and that plaintiffs had inexcusably delayed any amendment after being apprised of the necessity of one. He stated, without contradiction, that plaintiffs' attorney had asked him a year or more before trial for a stipulation consenting to an amendment of the complaint and that he had said he would give one upon condition that he receive the amendment at least 30 days before trial, but that plaintiffs' counsel had never presented one until the argument upon motion to exclude evidence. Plaintiffs' attorney upon his presentation gave no explanation of the delay and relied principally upon the proposed amend-

---

[3]Value of Long Beach property $100,000 plus furnishings worth $11,500, total $111,500, less trust deeds aggregating $94,800, leaves equity of $16,700, to be compared with plaintiffs' equity of $40,000.

ments quoted in footnote 2, *supra,* and the asserted applicability of *Feckenscher* v. *Gamble, supra,* 12 Cal.2d 482, 500.[4]

It further appeared from an affidavit of plaintiff Leila M. Bice, which was in the file and a proper subject of judicial notice, that the present attorneys were substituted into the case on October 7, 1954, depositions were taken and thereupon "a serious question arose as to the sufficiency of the complaint as to the mode of pleading the element of damages, and therefore by agreement of counsel in open court, the matter was put off calendar, the first delay occasioned at the instance of Plaintiffs and affiant for the purpose of giving this problem further study, with a possible view to amendment of the complaint; That such a study was given, and after a perusal of the facts, it was decided that the complaint was sufficient." An affidavit of Mr. Poppler, one of the attorneys, was presented on motion for new trial; it said that after taking of depositions he and Mr. Devitt weighed the problem of inadequacy of the pleadings, researched the law on the question of pleading damages for fraud, consulted other attorneys, and, relying on *Feckenscher* v. *Gamble, supra,* 12 Cal.2d 482, "concluded that the pleadings filed by plaintiffs' original counsel of record sufficiently pleaded the elements of damages for fraud and negligence and were adequate to bring the cause to trial on the merits. . . ." Counsel for plaintiffs insist upon this appeal that the complaint is good as an equity action for rescission and that section 3343 is not the applicable measure of damages. It does not appear that their failure to amend prior to the judge's ruling at the trial was due to negligence or mere obduracy. Counsel then seemed to believe, and now seems to believe, that the complaint is sufficient to state a cause of action. And it does not appear that counsel for defendants were surprised, misled or prejudiced in any way.

The court ruled as follows: "THE COURT: That much is true. Even if I permitted the amendment, I couldn't try the case because it raises some new and different issues upon which we could not expect the defendants to be prepared for trial at this time; namely, the value of the property

[4]Counsel for defendants asserted without denial that one of plaintiffs testified upon deposition that she had the money and could have made the trust deed payment. The transcript is a bit obscure at this point, but the matter is clarified by the affidavits on motion for new trial. The judge seemed to pay little attention to this proposed amendment, probably reasoning that it was a synthetic plea born of the exigencies of the lawsuit.

traded by the plaintiffs and, secondly, the foreclosure of the trust deed, nothing about which is alleged in the complaint as it now stands.

"Weighed over and against that is the fact that if the plaintiffs had been injured or damaged they should have their day in court at some time or other and be permitted to present their evidence to the Court. However, we come up some four years after the complaint is filed with a complaint that does not state a cause of action and then we want to interject some entirely new and different elements into the case that are not set up at all in the original complaint. The motion to amend is denied."

Defendants seek to justify the ruling upon the authority of cases such as *Vogel* v. *Thrifty Drug Co.,* 43 Cal.2d 184 [272 P.2d 1] ; *Moss Estate Co.* v. *Adler,* 41 Cal.2d 581, 586 [261 P.2d 732]. Appellants rely upon *Eatwell* v. *Beck, supra,* 41 Cal.2d 128, 135; *MacIsaac* v. *Pozzo,* 26 Cal.2d 809, 815 [161 P.2d 449], and similar cases. The Moss Estate case involved a belated amendment to an answer; the ruling is summarized in this language (p. 586) : "The trial court was thus presented with a situation wherein defendant sought to file an amended answer alleging a new defense based on different facts on the eve of the trial more than a year after the original answer was filed and more than two months after she had notice of the date set for trial. Defendant was aware of the facts at the time the original answer was filed, but she gave no excuse for her delay. The original answer gave no inkling of the facts alleged in the proposed amended answer, and a continuance would have been required had leave to file been granted. Under these circumstances we cannot say that the trial court abused its discretion in denying defendant leave to file her proposed amended answer." Numerous cases are then cited in support of the holding. The Vogel case presented an attempt to inject into a negligence action a new count alleging breach of warranty. Denial of leave to amend was affirmed because of long delay in asserting known facts followed by an attempt to inject new issues into the case at the trial. There was also the element that the proposed amendment did not state a good cause of action for breach of warranty. The basis for differentiation of the two lines of cases—those holding it to be error to deny leave to amend and those holding the contrary—seems to lie in this language at page 585 of the Moss Estate case : "In the present case we are not confronted

with an amendment designed to cure a technical defect in a pleading otherwise adequate to put the other party on notice of the true basis of the pleader's case. (See *Eatwell* v. *Beck, ante,* pp. 128, 135-136 [257 P.2d 643]; *Burns* v. *Scooffy,* 98 Cal. 271, 276 [33 P. 86]; *Chatfield* v. *Williams,* 85 Cal. 518, 520-521 [24 P. 839]; *Hopkins* v. *Hopkins,* 116 Cal.App.2d 174, 180-185 [253 P.2d 723].) Defendant's original answer was apparently based on the theory that a landowner may have an interest in a well located on adjoining land if that well taps a pool underlying both properties. At the trial, however, defendant abandoned this theory (see *City of Pasadena* v. *City of Alhambra,* 33 Cal.2d 908, 925-926 [207 P.2d 17]), and sought instead to set up an entirely different defense." █ The Eatwell-Beck case is classified as one involving "an amendment designed to cure a technical defect in a pleading otherwise adequate to put the other party on notice of the true basis of the pleader's case." In such instances the amendment must be allowed in furtherance of trial upon the merits. The Eatwell case is controlling here. █ It presents a situation similar to an order excluding evidence and the rule is well established that after such a ruling leave to amend must be granted "unless it appears to a certainty that no basic right of action can possibly exist or no relief can possibly be granted." (*Miller* v. *McLaglen,* 82 Cal.App.2d 219, 228 [186 P.2d 48].) See also *Perry* v. *Futch,* 119 Cal.App.2d 556, 559 [259 P.2d 971]; *Ser-Bye Corp.* v. *C. P. & G. Markets,* 78 Cal.App.2d 915, 917 [179 P.2d 342]; *MacIsaac* v. *Pozzo, supra,* 26 Cal.2d 809, 815; *Gallagher* v. *California Pac. T. & T. Co.,* 13 Cal.App.2d 482, 486 [157 P.2d 195]. And cases such as *Vogel* v. *Thrifty Drug Co., supra,* 43 Cal.2d 184, and *Moss Estate Co.* v. *Adler, supra,* 41 Cal.2d 581, do not involve any question of right or leave to amend after order sustaining motion to exclude evidence or motion for nonsuit. Examination of the numerous cases cited at page 586 of the Moss Estate opinion, in support of the holding that there was no abuse of discretion in denying leave to amend, discloses that none of them deals with such a situation. It does not appear that defendants at bar were prejudiced by plaintiffs' delay; the proposed amendment alleging plaintiffs' equity to be worth $40,000 would not inject any new issue into the case (the question of damages was already there). It was error to reject that proposed amendment, an error which in law amounts to an abuse of discretion.

█ The plaintiffs' charge against Farmers and Merchants

Bank of Long Beach is negligence, not fraud. It is averred that it was the escrow holder and it drew the instructions; that it was also acting as holder of an escrow between defendants Stevens and one Naomi N. Conover, from whom they were acquiring the Ocean Boulevard property; that the bank knew at all times that the Stevenses did not own that property, were in default in the Conover escrow and unable to complete the same, that the second trust deed for $43,000 was payable at the rate of $5,000 semiannually, not annually, and that the next payment would be due on September 9, 1949. The negligence charge is "that the said escrow instructions were so carelessly and negligently drawn as to fail to disclose and they did not in fact disclose the foregoing facts either as to the true ownership of the said property or the true terms of the said Deed of Trust, all of which were well known to the said Farmers and Merchants Bank of Long Beach. . . ." This is a specific charge of negligence; there is no general allegation; and plaintiffs would be held to proof of that specific averment. (*O'Connor* v. *Mennie,* 169 Cal. 217, 222 [146 P. 674]; *Preston* v. *Hubbell,* 87 Cal.App.2d 53, 61 [196 P.2d 113].) If there was no duty or right to make the disclosure there could be no negligence in failing to call for it in the instructions prepared by the bank.

The averment is that the bank was acting as escrow agent of an existing escrow, opened March 9, 1949, between Stevens and Conover and the plain inference of the allegations is that the facts which defendant failed to disclose, or to call for in the instructions prepared by it, were learned from the Stevens-Conover escrow. The revealing to plaintiffs of information contained in that escrow would have been a violation of the escrow holder's duty (*Blackburn* v. *McCoy,* 1 Cal. App.2d 648, 654 [37 P.2d 153]) it would also have been a breach of defendant's obligation to Stevens and Conover for it to contract (by escrow instruction in the Bice-Stevens deal) to disclose such confidential information; by the same token it could not be negligence merely to fail to call for such disclosure when preparing the Bice instructions. Appellants seek to avoid the effect of the Blackburn-McCoy case by urging that defendant bank had an interest in the subject matter of the escrow and as trustee had a duty of full disclosure. This hinges upon the allegation that one of the representations made to plaintiffs was that a first trust deed "in favor of the Farmers and Merchants Bank of Long Beach, California, with an unpaid principal balance of approximately $51,800.00"

was a lien upon the property. This representation is not alleged to be untrue. It appears that plaintiffs were purchasing subject to that lien and also a second lien of $43,000. There was no point to disclosing to plaintiffs what they already knew, a fact which in ordinary course would appear in the escrow instructions. That was the extent of the bank's interest in the property; and it was not a conflicting interest because everybody recognized it and agreed to sell and purchase subject to it. The complaint of nondisclosure relates to the second trust deed in which the bank had no interest so far as appears. There is no merit in this contention of appellants. The objection to introduction of evidence was properly sustained as to defendant bank.

The judgment is affirmed as to defendant Farmers and Merchants Bank of Long Beach and reversed as to all other defendants.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 7, 1955, and the petition of respondents James and Mabel Stevens, Earl and Florence Morrison, Keystone Realty Co., and Roland Hoagland for a hearing by the Supreme Court was denied December 14, 1955.