[Civ. No. 38.   Fifth Dist.   Jan. 29, 1962.]

O. F. MEFFORD et al., Plaintiffs and Appellants, v. SECURITY TITLE INSURANCE COMPANY, Defendant and Respondent.

Arthur J. May for Plaintiffs and Appellants.

Crowe, Mitchell, Hurlbutt & Clevenger and J. Thomas Crowe for Defendant and Respondent.

CONLEY, P. J.—This is an appeal from a judgment denying damages to the plaintiffs in an action in which they ask for $25,000 because of the alleged negligence of defendant, its alleged breach of contract, and its alleged fraud and misrepresentation. The case centers about an escrow which was opened by the plaintiffs, O. F. Mefford and wife, the owners of a parcel of land in the City of Tulare, and A. C. King, Inc. (hereinafter sometimes referred to as King), the proposed purchaser.

Plaintiffs suffered a considerable loss in their transaction with the King firm, and they now seek a remedy against the

title company as escrow holder on the basic ground that $10,000 which was supposed to be deposited with the defendant by the King organization was in the form of a check and not in cash; the title company assured the plaintiffs at various times that the $10,000 was in fact deposited, and thus became liable for the production of $10,000 in cash if the completion of the escrow should require it. However, the record shows that the escrow was never completed but was, in fact, canceled at the request of the plaintiffs and that no money under the escrow ever became due from the title company. Plaintiffs' counsel concedes that there is no part of the $10,000, as such, which his clients are entitled to recover. But the claim is made that the misrepresentation caused damage to the Meffords to the extent of $25,000; plaintiffs' theory is that they were deprived of an assurance of the commitment of A. C. King, Inc., to the extent of $10,000 in cash, and because of the misinformation given them by the title company, it is liable for their total loss.

It is necessary to outline the facts of the transaction in order to clarify the legal points involved. The Meffords desired to subdivide and sell their real property in the city of Tulare for a total price of $45,000 to A. C. King, Inc. The agreements between the buyer and seller assumed the form of escrow instructions given to the defendant Security Title Insurance Company. The original escrow instructions were dated February 29, 1956, but they were not actually signed by all of the parties on that date; they provided that the King company should pay into escrow the sum of $10,000 and should execute and deliver a note and deed of trust in the amount of $35,000 in favor of plaintiffs, to be utilized when defendant could issue a policy of title insurance showing title in A. C. King, Inc.; all of the 45 lots constituting the parcel of land were to be sold for $45,000, and interest on the note of $35,000 was to be credited to a date 30 days after the approval of the property as a subdivision by the Veterans Administration and the Federal Housing Administration. The instructions required that plaintiffs should obtain such approval and that both parties to the escrow would notify the defendant in writing of the dates on which the approval was obtained. In addition, the instructions specified that the deed of trust securing the $35,000 note for the purchase price of the lots by its own terms would be made subordinate to the lien of a deed of trust securing the repayment of a construction loan to build a dwelling house on each of the 45 lots in an amount not exceed-

ing $8,000 per lot, which would amount to a first lien of $360,000 on all 45 lots; there was a provision for the automatic release of the subordinated $35,000 deed of trust as to any lot for which the appellants received $1,000 plus accrued interest. The instructions did not obligate King to sell any of the lots after a house was built on it for any specific price or within any specified period of time.

On or about March 7, 1956, the respective parties agreed to amendments requiring the immediate deposit of $10,000 in the escrow by the King corporation, with the provision that this sum would be credited on the purchase of the last 10 lots sold by King. Two days later, on March 9, 1956, King approved the amendment of the escrow instructions and gave to the title company a check for $10,000, dated March 8, 1956, and drawn on the Fulton-Merced Branch of the Bank of America National Trust and Savings Association. Thereupon, one Ruggles, a representative of the title company, signed a certificate that the sum of $10,000 was on deposit in the escrow, no mention being made of the form in which the $10,000 was in fact deposited.

In addition to being advised of the deposit of the $10,000 by the Ruggles certificate, the plaintiffs were also told by Mr. Gannon, of defendant's Visalia office, that the $10,000 had been deposited by King, no mention being made that it was in the form of a check; upon seeing the original, or a copy of the letter of instructions of March 9, 1956, executed by King, which accompanied the deposit and bore the Ruggles certification that $10,000 was on deposit in the escrow, plaintiffs executed a counterpart of the original escrow instructions dated February 29, 1956, executed a deed conveying the land to King, and a letter of instructions to defendant and authorized Mr. Gannon to forward original instructions, deed and letter of modifications dated March 13, 1956, to defendant's Fresno office.

The plaintiffs thereupon subdivided their property. As the escrow instructions then provided, the $10,000 so deposited in escrow by King could not be delivered to plaintiffs until they and King should notify defendant in writing of the fact that the Veterans Administration and Federal Housing Administration had approved the subdivision; the instructions also prevented defendant from recording the deed of conveyance of the lots from plaintiffs to King until notification of the agencies' approval had been so made.

Some six months later, on September 21, 1956, plaintiffs and King amended the escrow agreement in major particulars. Before signing the amended instructions, plaintiffs asked defendant if King's $10,000 was still on deposit and were assured that it was; in fact, the check, uncashed, was still held by it. The amended instructions included plaintiffs' agreement immediately to convey to King title to 25 of the 45 lots and to accept in return only a note for $25,000 secured by a deed of trust on the 25 lots which would be made subordinate by its own terms, to the lien of a deed of trust not to exceed $200,000 securing the repayment of a construction loan for the purpose of constructing a dwelling house on each of the lots in an amount not over $8,000 per lot. These amended instructions provided that the deed of conveyance be immediately recorded and that a policy of title insurance showing title to the 25 lots to be vested in King, subject to the lien of the deed of trust, be immediately issued.

The amended instructions provided also for the execution and escrowing of a second deed by plaintiffs conveying title to King of the remaining 20 of the 45 lots for which the plaintiffs were to receive the $10,000 on deposit and King's note for $10,000, secured by a deed of trust on the 20 lots but subordinate to the lien of a deed of trust securing the repayment of a construction loan for the purpose of constructing a dwelling house on each lot in an amount not over $8,000 per lot or $160,000 for the 20 lots. The amended instructions also provided that the deed to the 20 lots and the deed of trust were not to be recorded until the approval of the entire subdivision by the Veterans Administration and by the Federal Housing Administration, and the plaintiffs were not to receive the $10,000 deposited in escrow until that time.

The amended instructions provided for the payment by King of an additional cost of two policies of title insurance ($64) and for the beginning of construction by the King corporation within 45 days after the recordation of the deed conveying the 25 lots to it. The amended instructions further stated: ''All other terms of original instructions to remain as written it being understood that instead of one deed being executed and one deed of trust being executed in amount of $35,000.00 that two deeds and two deeds of trust will be executed according to amended instructions as stated above.''

The two deeds and the two deeds of trust referred to in the amended escrow instructions, dated September 21, 1956, were executed and deposited. The deed and deed of trust covering

the 25 lots were recorded. King obtained a construction loan of $194,000 from other parties and secured its repayment by a first deed of trust on the 25 lots. Plaintiffs' deed of trust for $25,000 was, of course, subordinated by its terms to the $194,000 encumbrance.

King thereafter built houses on the 25 lots. Defendant was never advised in writing by King and plaintiffs, or either of them, of Veterans Administration or Federal Housing Administration approval of the subdivision, and evidently such approval was never obtained. On July 2, 1957, King advised defendant that because of delay, absence of approval and other matters outlined in its notice, it could not complete the contractual arrangements and requested the return of all unrecorded instruments deposited in escrow. On July 5, 1957, plaintiffs, learning that the $10,000 was deposited by check only, gave notice to defendant of the cancellation of the escrow instructions and demanded the return of all deposited documents.

The construction loan for $194,000 on the 25 lots was foreclosed, and plaintiffs' subordinated deed of trust securing the payment of $25,000 became worthless. Plaintiffs retained title to the remaining 20 lots; after July 5, 1957, they transferred title out of their names.

The check for $10,000 was never cashed. There was testimony that at all times after plaintiffs were informed the $10,000 was on deposit the defendant assumed responsibility for the collection of said check; there was also evidence that from March 8, 1956, until March 11, 1957, the check could have been cashed, but that on the last-mentioned date the King company stopped payment on the check.

The defendant adduced testimony that the $10,000 deposit would have been paid to plaintiffs if they had complied with the escrow instructions, whether the check had been good or bad; in other words, the defendant assumed responsibility for the payment of the check in line with its previous statements that the funds were on deposit. But the plaintiffs insist that had they known the deposit was in the form of a check, they would never have entered into the escrow, and had they been aware on September 21, 1956, that the deposit was an uncashed check, they would not have executed and delivered a deed to the 25 lots, and consequently would not have lost their property. They maintain that defendant fraudulently induced them to enter into a contract by misrepresentations as to the $10,000 deposit.

█ From and after the time defendant informed the plaintiffs that the $10,000 deposit had been made and plaintiffs relied and acted upon that information, the defendant was estopped to deny that the sum of $10,000 was in fact on deposit. (*Graddon* v. *Knight,* 138 Cal.App.2d 577, 582 [292 P.2d 632]; 18 Cal.Jur.2d, Estoppel, § 2, p. 404; Code Civ. Proc., § 1962, subd. 3.) Defendant was then obligated to pay the sum of $10,000 in cash to plaintiffs upon full compliance with the terms of the escrow.

█ Checks are a common means of payment. "It is a matter of common knowledge that checks and drafts are usual and ordinary means of transferring money in the transaction of business." (*Greenzweight* v. *Title Guar. & Trust Co.,* 1 Cal.2d 577, 581 [36 P.2d 186].)

█ " 'In California the general rule which prohibits payment to an agent authorized to collect in any form other than money has been relaxed to permit payment by check. (*California Stearns Co.* v. *Treadwell,* 82 Cal.App. 553 [256 P. 242].)' " (*De St. Germain* v. *Watson,* 95 Cal.App.2d 862, 869 [214 P.2d 99].)

█ ". . . when a person gives a check he represents that he has the money in the bank to cover it, and that the bank will pay the amount called for. (19 Cal.Jur. 948.) Moreover, if he does not have the money in the bank it may constitute a crime. (Pen. Code, § 476a.)" (*De St. Germain* v. *Watson, supra,* 95 Cal.App.2d 862, 868 [214 P.2d 99].)

On page 10 of appellants' opening brief it is said:

"Now while it may be proper to receive a check, it is not proper to hold the check for a year, and certainly the money is not on deposit until the check has been cashed. A check is merely an order to pay money and may be stopped at any time."

Appellants thus concede that it was proper for the title company to accept a check in the first instance but maintain that it should have cashed it immediately or at least within a reasonable time. █ It was the duty of the defendant in the circumstances to cash the check and hold the money, but no harm was actually done, for the escrow company, measuring up to its liability, admitted that it was exactly as responsible to plaintiff as if the money had in fact been deposited in cash.

The title company was not guilty of any fraud. And there was no causal connection between the mistake of the company in handling the escrow and any damage to plaintiffs. The loss

to plaintiffs resulted from their voluntary amendment of the original escrow instructions and the changes made by them in their deal with King; and we do not see how any damage would logically result from any act or omission of the escrow company.

In passing, it should be noted that no general agency was created between plaintiffs and defendant by the escrow.

██ "The escrow instructions constitute the full measure of the obligations assumed by the escrow holder and owing to the parties. Hence, a general agent's duty of disclosure does not extend to an escrow holder as such, who is not required to give a party to the escrow arrangement any information which he has but which, under the escrow instructions, he is not duty bound to forward to such party." (18 Cal.Jur.2d, Escrow, § 17, p. 330; *Blackburn* v. *McCoy,* 1 Cal.App.2d 648 [37 P.2d 153]; *Bice* v. *Stevens,* 136 Cal.App.2d 368, 379 [289 P.2d 95].)

Since plaintiffs and King, Inc., did not join in giving to defendant written notice of approval of the VA and FHA agencies as required as a condition precedent by the instructions, defendant did not become the agent of plaintiffs as to the $10,000 deposit. (*Kellogg* v. *Curry,* 101 Cal.App.2d 856, 859 [226 P.2d 381]; *Vineland Homes, Inc.* v. *Barish,* 138 Cal. App.2d 747, 750 [292 P.2d 941].)

██ The defendant never held the $10,000 in trust for plaintiffs, because the escrow conditions were not fulfilled. (*Orloff* v. *Metropolitan Trust Co.,* 17 Cal.2d 484, 488 [110 P.2d 396]; *Widess* v. *Title Ins. etc. Co.,* 112 Cal.App. 343, 347 [296 P. 899].)

██ Under the amended escrow instructions of September 21, 1956, plaintiffs, by voluntary action, removed what safeguards they had as to the 25 lots; they, and not the escrow company, are responsible for their loss.

We conclude that no error appears in the record, and it is accordingly ordered that the judgment is affirmed.

Stone, J., concurred.

Brown, J., deeming himself disqualified, did not participate.

Appellants' petition for a hearing by the Supreme Court was denied March 28, 1962.