[Civ. No. 563.  Fifth Dist.  Apr. 20, 1966.]

C. B. CUNNINGHAM et al., Plaintiffs and Appellants, v. SECURITY TITLE INSURANCE COMPANY et al., Defendants and Respondents.

Savage & Shepard and James S. Shepard for Plaintiffs and Appellants.

Crowe, Mitchell, Hurlbutt, Clevenger & Long and J. Thomas Crowe for Defendants and Respondents.

CONLEY, P. J.—C. B. Cunningham and his wife sued the Security Title Insurance Company and its employee, Charles W. Streeper, for alleged negligence in the execution and completion of an escrow involving the sale by the Cunninghams of their mountain chicken ranch to George and Donna Gillespie. The case was tried by the court without a jury and resulted in a judgment that plaintiffs take nothing by reason of their action.

The Cunninghams desired to sell their 350-acre ranch, together with the buildings on that portion of the property which was fenced, and a comprehensive list of equipment, including chicken brooders, pumps, and other property designed principally for raising chickens. The Gillespies became attracted to the proposed sale, and a conference was held between the plaintiffs and the proposed purchasers at which Lloyd Griffin, a real estate agent representing the plaintiffs, was the activating element.

At that time, Mr. Griffin made out a deposit receipt approved by all the parties. Thereafter, the buyers and sellers and Mr. Griffin, as agent of the plaintiffs, went to the Security Title Insurance Company's office in Visalia where Mr. Streeper, an experienced title man, drew up escrow instructions, and then a deed, a trust deed, and a bill of sale in strict accordance, as found by the trial court, with the escrow instructions. The sellers executed a deed to the purchasers; the Gillespies, in turn, signed a note and trust deed for the balance due, and the Cunninghams also executed the bill of sale which constituted a part of the escrow and consideration for which was included in the total purchase price.

There is evidence that the Cunninghams also executed and delivered to the Gillespies a second bill of sale for certain specified articles of personal property, entirely outside of the escrow.

The total purchase price of the ranch and the personal property in the escrowed bill of sale was $60,550, payable $500 on

May 23, 1959, $17,000 at or before the close of escrow, and $43,050 in the note secured by the deed of trust.

The case turns on the questions whether all items in the escrowed bill of sale were correctly included and whether the bill of sale took timely effect according to the contract between the parties. Plaintiffs claim that they did not intend to pass title by the bill of sale to all of the property described in the document as personalty, and also that the bill of sale was not to take effect until the full purchase price of $60,550 had been paid. On the contrary, the defendants say that they followed explicitly the directions of plaintiffs and that it was the intention of the Cunninghams, as shown by the specific terms of the escrow instructions, that the bill of sale was to be delivered and, therefore operative, at the close of escrow; the Gillespies contended that they gained title to all of the property specified in the bill of sale immediately upon the close of the escrow, and that they consequently had the right to remove it from the ranch and to sell it to whomsoever they wished. The Gillespies failed to carry out their agreements with the Cunninghams contained in the note secured by the deed of trust; and they removed all or at least a preponderant part of the personal property described in the bill of sale, selling some of it and retaining other items to the damage of the chicken ranch as an operative property. The Cunninghams thereafter foreclosed the deed of trust and repurchased the real property.

█ By virtue of the description of specific enumerated items, which previously had been attached to the realty as fixtures, the bill of sale constituted an agreement that such articles, even though still physically attached to the realty, should thereafter become personal property as between the parties. (Civ. Code, § 660; *Jordan* v. *Reynolds,* 108 Cal.App. 2d 91 [237 P.2d 1005]; *Kolstad* v. *Ghidotty,* 212 Cal.App.2d 228 [28 Cal.Rptr. 123]; 22 Cal.Jur.2d, Fixtures, § 16, p. 280.)

The pleadings and the evidence of the respective litigants are in serious conflict. █ The plaintiffs correctly call attention to the duty which an escrow holder owes to the respective parties not to be negligent in carrying out its undertaking, and that it is liable for any title defect created by itself. (*Spaziani* v. *Millar,* 215 Cal.App.2d 667, 682-683 [30 Cal.Rptr. 658]; *Hansen* v. *Western Title Ins. Co.,* 220 Cal. App.2d 531 [33 Cal.Rptr. 668, 98 A.L.R.2d 520].) █ But we must point out that the function and duty of an appellate court is the same here with respect to substantially conflicting

evidence as in every other appealed case: if the findings of the trial court as to questions of fact are against an appellant and there is substantial evidence supporting the findings, we are bound by the trial court's determination as to such facts. In this case, the findings of the court are against the plaintiffs and in favor of the defendants on these controverted matters, and there is substantial evidence to support such findings. Among other things, the court found that the defendant Security Title Insurance Company, through its employee, Streeper, at the request of the parties and Lloyd Griffin, agent of the plaintiffs, prepared escrow instructions which were then signed by the sellers and the buyers; that Mr. Streeper similarly fully completed the bill of sale, and that it was signed by plaintiffs and delivered to the Gillespies in accordance with the terms of the escrow instructions; that at the time of the execution and delivery of the bill of sale the items specified in the instrument, including those which had been fixtures, became the personal property of the Gillespies; that the Gillespies entered into possession of the real and personal property, and that they thereafter defaulted in their obligation under the promissory note secured by the deed of trust; that they removed substantial portions of the property described in the bill of sale from their location on the real property; that the escrow instructions, the bill of sale, the promissory note, the deed of trust, and the policy of title insurance were prepared by the defendants in strict accordance with the directions of the plaintiffs acting personally and through their agent, Lloyd Griffin; that after the preparation of the escrow instructions, but before they were signed, they were read over and fully explained to the plaintiffs and to their agent, Lloyd Griffin; that the plaintiffs did not sustain any damages as the result of any act or omission on the part of the defendants and that the latter were not negligent in connection with any of the factors relating to the escrow.

It is unfortunate that the plaintiffs did not fully foresee the effect of the documents prepared at their request. However, the evidence is ample that the escrow instructions, objectively considered, controlled the rights of the parties.

In *Mefford* v. *Security Title Ins. Co.*, 199 Cal.App.2d 578, 585 [18 Cal.Rptr. 877], this court quotes approvingly from 18 California Jurisprudence, Second Edition, Escrows, section 17, page 330, as follows: " 'The escrow instructions constitute the full measure of the obligations assumed by the escrow holder and owing to the parties. Hence, a general agent's duty of

disclosure does not extend to an escrow holder as such, who is not required to give a party to the escrow arrangement any information which he has but which, under the escrow instructions, he is not duty bound to forward to such party.' "

Appellants argue that there were errors in the rulings of the trial court in excluding evidence; most of these rulings were correct or on collateral or immaterial subjects; but if there were rulings which were somewhat doubtful in view of the objectives sought by counsel for plaintiffs, no. ruling, in the final analysis, was seriously injurious; it appears from the record that there was no major restriction of cross-examination that prevented the plaintiffs from urging with full force the propriety of the allegations of their complaint and the principles relied upon by them. ■ Plaintiffs' counsel aske'd Mr. Streeper what he believed to be personal property and what he believed to be real property with respect to the items contained in the bill of sale. The court excluded· answers on the ground that the opinion of the witness was improper, as, actually, the court had to decide that question for itself. Similarly, the witness was asked if the item "all the buildings on the fenced property," in his opinion, constituted personal property. The court also refused to permit an answer to the question whether he had ever seen an escrow exactly like this one before. It does not appear to us that any of the rulings complaine'd of, even if technically doubtful in a few instances, would in any way constitute prejudicial error.

■ One of the objections made by the plaintiffs centers in the fact that the policy of title insurance does not note as an exception that the items of property specified in the bill of sale which had previously constituted fixtures were to be excluded from the protective effect of the policy. Upon the oral argument of the appeal, this question was urged by counsel for the appellants as one of the principal reasons why a reversal of the judgment should follow. The answer to this argument, first of all, is that the complaint does not base its claim for recovery on the contents and effect of the policy of title insurance, and secon'dly and more importantly, because the effective terms of the entire escrow must be taken into consideration; as the bill of sale was executed at the same time as the escrow instructions and delivered contemporaneously with the deed, trust deed, and policy of title insurance, the items mentioned in the bill of sale, which had previously been fixtures, did not remain a part of the real property as between the parties at the close of the escrow when the policy of title insurance took effect.

It is further urged by plaintiffs that the court erred in refusing them the right to cross-examine Lloyd Griffin. That witness was legitimately called by the defendants, under the provisions of section 2055 of the Code of Civil Procedure, because he had been an agent of the plaintiffs at the time of the establishment of the escrow. Upon the completion of his "cross-examination" by counsel for the defendants, he was turned over to the attorneys for the plaintiffs. In these circumstances, he was a witness for the plaintiffs. When counsel for the plaintiffs indicated that he wished to examine Mr. Griffin as an adverse witness, the trial judge said, "Well, I don't agree that you should be entitled to examine him as an adverse witness. There is no showing of hostility. There is no showing of any grounds for treating him as an adverse witness." The viewpoint of the court was proper.

The judgment is affirmed.

Stone, J., concurred.