[Civ. No. 26767. First Dist., Div. Two. Apr. 22, 1970.]

VIRGIL L. WADE et al., Plaintiffs and Appellants, v.
LAKE COUNTY TITLE COMPANY, Defendant and Respondent.

**COUNSEL**

Leo M. Cook for Plaintiffs and Appellants.

Crump, Bruchler & Crump and Bruce B. Bruchler for Defendant and Respondent.

**OPINION**

**DAVID, J.\***—Plaintiff vendors appeal from a judgment in favor of the bankrupt defendant purchasers of ranch property; and the title company escrow holder.

Plaintiff vendors and defendant purchasers, on May 19, 1965, entered into a written agreement for the sale and purchase of a walnut grove in Lake County, for the sum of $125,000, later modified to $115,000.

Vendors and purchasers opened an escrow with defendant title company on June 17, 1965. The agreement of May 19, 1965, was never deposited in escrow. Separate escrow instructions were signed by the vendors and the purchasers. On July 22, 1965, the vendors signed their escrow instructions, and purchaser Kimberly Mosier delivered in escrow his personal check for $15,000 payable to Lake County Title Company. Clipped to the check was a little note in the handwriting of the escrow officer, reading: "Hold, *do not deposit*—Mosier will notify us." (Italics added.) Purchasers' separate escrow instructions were dated July 27, 1965. The vendors were not aware of the instruction of the purchasers to hold the check, the title company did not inform the vendors of the instruction by the purchasers to hold the check, the title company did not deposit the check, and it was not until December 3, 1965, that the vendors learned, through their attorney, that the check had not been deposited by the title company and that the money was not in the bank to pay the check.

Purchasers refused to complete the purchase, and at the time of trial, September 1967, vendors remained the owners of the grove.

The complaint is for specific performance of the contract, or, in lieu thereof, damages; and in the event of nonperformance by the purchasers, for damages against the escrow holder for breach of the escrow agreement; and for negligence based on the escrow holder's failure to deposit the check for collection or to advise the vendors that it was holding the undeposited check.

The trial court found that the purchasers had breached the contract,

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

but that vendors were not entitled to a decree of specific performance because of the purchasers' inability to perform by reason of bankruptcy. We then consider the vendors' claim that by reason of the negligence of the title company, the vendors have lost a source (the deposit) out of which damages flowing from the breach of contract might have been collected.

■ The duty of an escrow holder is to comply strictly with the instructions of his principal. (*Amen* v. *Merced County Title Co.* (1962) 58 Cal.2d 528, 531 [25 Cal.Rptr. 65, 375 P.2d 33].) ■ Upon the breach of an instruction by an escrow holder, the injured party acquires a cause of action for breach of contract. (*Amen* v. *Merced County Title Co., supra,* 58 Cal.2d at p. 532.)

■ It is also the duty of an escrow holder to exercise reasonable skill and ordinary diligence in his employment, and if the escrow holder acts negligently, it is ordinarily liable for any loss occasioned by its breach of duty. (*Amen* v. *Merced County Title Co., supra,* 58 Cal.2d at p. 532; *Rianda* v. *San Benito Title Guar. Co.* (1950) 35 Cal.2d 170, 173 [217 P.2d 25]; *Kelly* v. *Steinberg* (1957) 148 Cal.App.2d 211, 217 [306 P.2d 955]; *Mefford* v. *Security Title Ins. Co.* (1962) 199 Cal.App.2d 578, 584 [18 Cal.Rptr. 877].)

The trial court found that the title company was negligent in "accepting the check of $15,000.00 with instructions not to deposit the check and failing to either notify the seller of the restriction, or including the restriction or fact of the restriction in the escrow instructions, so the seller would not be misled thereby." ■ Since there is substantial evidence supporting the findings, we are bound by the trial court's determination. (*Cunningham* v. *Security Title Ins. Co.* (1966) 241 Cal.App.2d 626, 630 [50 Cal.Rptr. 724].)

The check was handed to the escrow officer by the purchasers in the presence of vendor Virgil Wade on July 22, 1965, at the time the vendors' escrow instructions were delivered to the title company. The note concerning the holding of the check was appended to the check by the escrow officer of the title company upon the oral direction of the purchasers without notice to the vendors. ■ After written instructions signed by each party are deposited with the eschow holder, neither can change his instructions without the concurrence of the other. (*Womble* v. *Wilbur* (1906) 3 Cal.App. 535, 547 [86 P. 916].)

■ Purchasers' escrow instructions were signed on July 27, 1965, showing a $15,000 deposit with a notation directly above reading "(CASH DEMAND BEING $15,000.00)."

Although there was no date set for performance, the vendors made frequent inquiries at the title company as to when the escrow would close. On none of these occasions were they told that the check had not been deposited. Vendors' attorney, on making inquiry on their behalf on September 4, 1965, was told that the sum of $933.35 in closing costs was necessary to close the transaction, and it was not until December 3, 1965, that the escrow officer advised the vendors' attorney that the check for $15,000 had not been processed and the money was not there or in the bank on which the check was drawn. Although the instructions of the parties contained no direction that the check be deposited, an escrow agent, in the exercise of ordinary diligence would not hold a check for the length of time shown here, without checking to see whether the purchaser had sufficient funds on deposit, and without advising the vendors that the check had not been deposited. (See *Mefford* v. *Security Title Ins. Co., supra,* 199 Cal.App.2d at p. 584.) We conclude, therefore, that there is substantial evidence to support the finding of the trial court that the escrow holder was negligent; and it is estopped to deny that the sum of $15,000 was in fact on deposit with the title company.

We next examine the trial court's finding that the vendors did not sustain any damage by reason of the purchasers' failure to perform or by reason of the title company's negligence.

An owner may testify competently as to the value of his property. (*Newhart* v. *Pierce* (1967) 254 Cal.App.2d 783, 789 [62 Cal.Rptr. 553]; opinion by Christian, J.) Virgil Wade testified that at the sale price of $115,000 the land was under-priced, that he thought it really was worth $138,000-$140,000 at the time of the sale, that vendors still owned the property at the time of trial, and would ask $138,000 for it at the time of trial. If the value of the ranch at the *date of the breach* either exceeded the contract price, or was the same as the contract price, the vendors suffered no damage within the meaning of Civil Code, section 3307. "There can be no damages where the value to the owner equals or exceeds the contract price." (*Newhart* v. *Pierce, supra,* 254 Cal.App.2d at p. 792.) There was no testimony as to the value of the ranch at the date of the breach, but we conclude from the testimony offered that the value did not at any time subsequent to the sale fall below the contract price. Consequently, the vendors suffered no damage under Civil Code, section 3307.

Our next inquiry is whether the vendors are entitled to receive actual damages incurred in the performance of the contract, the second element of damages for a purchaser's breach of contract. Virgil Wade testified they lost $4,000 as a result of selling the 1965 walnut crop late, and from

$12,000 to $15,000 in lost customers in the walnut-drying business. Vendors on appeal have abandoned their claim for damages for lost customers, but contend that the evidence supports their claim for special damages from the loss of their contract price for the sale of walnuts.

There being no difficulty in ascertaining the vendors' actual damages, their contention that had the $15,000 been deposited by the title company, they would have been entitled to retain the entire deposit as liquidated damages according to the terms of the agreement of sale, is without merit. (*Freedman* v. *Rector, Wardens & Vestrymen of St. Matthias Parish* (1951) 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1].)

We note, in passing, that the deposit receipt, plaintiffs' Exhibit 2, was identified, and while referred to does not appear to have been received into evidence, though fundamental to appellants' claim to the sum placed on deposit in escrow.

■ Under the provisions of Civil Code, section 3307, "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him." But the view that this section is exclusive, and precludes other consequential damages occasioned by the breach, was rejected in *Royer* v. *Carter* (1951) 37 Cal.2d 544, 550 [233 P.2d 539]. Under Civil Code, section 3300, other damages are recoverable, usually embracing the out-of-pocket expenses lost by failure of the transaction.

■ Where a deposit has been posted, providing as here for its retention by the vendors if the vendees do not perform, it may be found in fact to constitute liquidated damages. But when its status does not permit such a finding, and retention in toto would be an unauthorized penalty, the provisions of Civil Code, section 3275, likewise apply: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful or fraudulent breach of duty." (*Baffa* v. *Johnson* (1950) 35 Cal.2d 36, 38 [216 P.2d 13].)

■ Thus, if the $15,000 deposit had been made as provided, as an installment of the purchase price, the vendees would only have been relieved from the forfeiture of it upon "making full compensation" to the vendors, which includes not only the damages under Civil Code, section 3307, if any, but the consequential damages to the vendors. (*Wilson* v. *Security-First. Nat. Bank* (1948) 84 Cal.App.2d 427 [190 P.2d 975]; *Glock* v.

*Howard & Wilson Colony Co.* (1898) 123 Cal. 1 [55 P. 713]; *Ebbert* v. *Mercantile Trust Co.* (1931) 213 Cal. 496 [2 P.2d 776]; *Lines* v. *Marin Municipal Water Dist.* (1964) 228 Cal.App.2d 155 [39 Cal.Rptr. 294].) Thus, assuming the vendors lost $4,000 in marketing their walnut crop as a consequence of the vendees' breach, they are entitled to $4,000 of the $15,000 deposit. (*Freedman* v. *Rector, Wardens & Vestrymen of St. Matthias Parish, supra,* 37 Cal.2d at p. 23.) The respondent title company is liable to the appellants to the extent of any damage sustained by appellants in consequence of the breach by the vendees, not to exceed $15,000.

The judgment is reversed, with the directions to determine and reassess the amount of appellants' damages pursuant to the views expressed herein; and to make findings and enter judgment accordingly. Appellants will recover their costs on appeal. (Cf. *Freedman* v. *Rector, Wardens & Vestrymen of St. Matthias Parish, supra,* 37 Cal.2d at p. 23.)

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied May 22, 1970.