Filed 6/16/15  K Corp. Enterprises v. Fidelity Nat. Financial CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| K CORP. ENTERPRISES, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> FIDELITY NATIONAL FINANCIAL, INC. et al., <br><br> Defendants and Respondents. | F069098 <br><br> (Super. Ct. No. S-1500-CV-273919) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Clayton Campbell for Plaintiff and Appellant.

Fidelity National Law Group, Helen P. Hoeffel for Defendants and Respondents.

-ooOoo-

An error in a preliminary title report caused an escrow company to record an incorrect grant deed on behalf of a buyer of real property.  The grantor's name as shown was incorrect.  Six years later, the buyer's efforts to sell the property were temporarily thwarted by this problem.  The title insurer honored the buyer's claim and removed the defect, but by that time the delay had resulted in damages.  No additional recourse being available under the title insurance policy, the buyer sued the escrow company, the escrow

officer employed by the company, and the title insurer, claiming negligence, breach of fiduciary duty, and breach of the escrow agreement. No issues under the title insurance policy were raised. After a bench trial, the court found for defendants on all causes of action.

We affirm. Plaintiff K Corp. Enterprises, Inc. (K Corp.), has not demonstrated that the trial court erred in finding no liability.

### FACTS AND PROCEDURAL HISTORY

In 1994, Samuel Brainin bought a condominium in Santa Barbara. He took title not in his own name but as trustee of the Sam Brainin Trust of September 29, 1993.

In June 2000, Brainin, as trustee, recorded a deed purporting to transfer the property to himself as an individual. A description of the property was attached as an exhibit. On August 29, 2000, Brainin, as an individual, recorded another deed, purporting to transfer the property back to the trust, with himself again as trustee. The same description of the property was again attached as an exhibit.

On August 11, 2003, Brainin entered into an agreement to sell the property to Kyle Carter. The following day, Chicago Title Company issued a preliminary report. The preliminary report stated that title to the property was vested in Brainin as an individual, subject to item 24 in schedule B. It further stated that Chicago Title Company would issue or cause to be issued a policy of title insurance insuring against loss caused by any title defect not shown in schedule B. Item 24 in schedule B was "effect of deed from Samuel M. Brainin, a married man as his sole and separate property to Sam Brainin, trustee of the Sam Brainin Trust of September 29, 1993 recorded August 29, 2000 .…" Item 24 explained that this deed "contains incorrect legal description."[1] (Capitalization omitted.)

---

[1]The parties' briefs do not offer any account of what was wrong with the description. Our comparison of the 1994 deed with the two, 2000 deeds shows a small number of typographical or clerical errors. In the most significant of these, the 2000

In other words, Chicago Title Company had determined that Brainin held title as an individual, not as trustee, because its title search had discovered an incorrect legal description of the property in the deed of August 29, 2000, which was the last recorded transaction and which purported to transfer the property from Brainin as an individual to Brainin as trustee. The insurer was willing to insure the title of Brainin as an individual because that deed was ineffective and thus left title remaining with Brainin as an individual; but it excluded from the policy any defect in Brainin's title that might possibly arise from the ineffective attempted transfer to the trust.

The preliminary report did not, however, contain any reference to the fact that the previous transfer—from the trust to Brainin as an individual in June 2000—was by means of a deed that had the same incorrect legal description of the property. The report thus overlooked the facts that Brainin's title as an individual also was apparently defective and that the last transfer lacking the defect was the original transfer to Brainin as trustee when he purchased the property in 1994.

Escrow officer Trisha Kenney,[2] an employee of Chicago Title Company, prepared or directed the preparation of a deed to transfer the property from Brainin to one of Carter's companies, Kyle Carter Customer Service, Inc. (Another of Carter's companies, K Corp., later succeeded to the assets and claims of Kyle Carter Customer Service, Inc.) Relying on the preliminary report, Kenney listed Brainin, as an individual, as the grantor on the deed. She understood the preliminary report to mean that the trust had failed to receive valid title because of the incorrect legal description in the deed recorded on

---

versions refer to "Book 1698, Pages 21 through 29," where the 1994 version refers to "Book 169, Pages 21 through 29 …." Also, where the face of the 1994 deed only incorporates an attached description by reference, the faces of the 2000 deeds contain both the incorporation by reference and a recitation of a fragment of the description, which could be seen as misleading.

[2]At the time of the transaction, Kenney had her maiden name, Trisha Keiser.

August 29, 2000. She was not aware of the earlier transfer with its similarly erroneous deed.

A deed purporting to transfer the property from Samuel Brainin as an individual to Kyle Carter Customer Service was recorded on September 29, 2003. Chicago Title Insurance Company issued a policy of title insurance to Kyle Carter Customer Service on the same day.

On October 7, 2009, K Corp. entered into an agreement to sell the property to Patricia Leontsinis. During the escrow period for this transaction, an escrow officer from First American Title told Kyle Carter that the 2003 transfer had not been effective. Carter and the buyer agreed to extend the escrow and Carter submitted a claim to Chicago Title Insurance Company. Chicago Title Insurance Company accepted the claim, but additional extensions of escrow were necessary and the buyer withdrew before the title was cleared.

K Corp. completed a sale to another buyer, for a lower price, in June 2010. Chicago Title Insurance Company cleared the title by obtaining a quiet title judgment, which was filed in superior court in December 2010.

K Corp. filed this lawsuit on June 20, 2011. The defendants are Chicago Title Insurance Company, Chicago Title Company,[3] and Trisha Kenney. Two other defendants, Fidelity National Financial, Inc., and Fidelity National Title Group, were named but later dismissed.

---

[3]The parties' appellate briefs do not explain the relationship between Chicago Title Insurance Company and Chicago Title Company, and we have not found any explanation of this relationship in the record. Throughout its briefs, however, K Corp. refers to Chicago Title Insurance Company as the title insurer and Chicago Title Company as the escrow holder, and asserts that they are separate entities. For the sake of argument, we will assume these really are two separate corporate entities and that K Corp.'s descriptions of them as title insurer and escrow holder correctly describe the two entities' roles in the facts on which K Corp.'s claims are based.

As amended, K Corp.'s complaint alleged three causes of action against all defendants. First, it alleged that defendants were negligent in their failure to identify correctly the grantor in the deed of September 29, 1993, as Brainin the trustee. Second, the complaint alleged that defendants breached their fiduciary duty to K Corp.'s predecessor because they had reason to suspect a potential defect in the title, but they did not inform K Corp.'s predecessor of the problem. Finally, the complaint alleged that defendants breached their escrow agreement with K Corp.'s predecessor by failing to prepare a deed that would "effectively" transfer the property.

In the complaint, K Corp. prayed for damages based on the loss of the sale to Leontsinis, which led to a later sale for a lower price at a higher commission. The amount claimed for this portion of the damages was $255,775.18. At trial, K Corp. undertook to prove additional damages based on another real property transaction that K Corp. could have executed by itself, in cash, had the Leontsinis sale been completed. Instead, it had to obtain financing and split the profits with a partner. K Corp. claimed $450,000 in lost profits on this transaction.

The trial was to the court without a jury. K Corp. presented testimony by Kyle Carter and Trisha Kenney. Defendants presented testimony by Trisha Kenney. The defense also called Corlis Chevalier, a claims attorney with Fidelity National Title who testified about the Chicago Title Insurance Company policy and the action taken by Chicago Title Insurance Company to resolve K Corp.'s claim under the policy.

The court ruled for the defense. The following paragraphs from the statement of decision set forth the court's reasoning:

> "Defendants have no liability on plaintiff's claim because defendant Chicago Title Insurance Company fulfilled its obligations under the terms and conditions of the title insurance policy issued to plaintiff such that … plaintiff is not entitled to recover any damages from defendants. Chicago Title Insurance Company acted with reasonable diligence to remove the cause of the claim tendered by plaintiff to Chicago Title Company/Chicago Title Insurance Company, and Chicago Title Insurance Company has no

5.

obligation for any alleged loss incurred during the time Chicago Title Insurance Company was removing the cause of the claim. A preliminary title report is not an abstract of title, but only reflects the terms under which the insurer is willing to issue title insurance, which may or may not reflect the true condition of record title.

"Defendants are not liable for negligence for having listed … the grantor in his individual capacity, as the preliminary report states that title to said estate or interest is vested in Samuel M. Brainin, a married man as his sole and separate property, subject to item 24 of Schedule B. Defendants had no obligation to list the grantor in some other capacity, and could not do so as the transfer to the trust contained an incorrect legal description.

"Plaintiff did not carry its burden to prove negligence or breach of fiduciary duty or contract of any defendant otherwise, and did not carry a burden to prove causation of foreseeable damages."

## *DISCUSSION*

K Corp. now argues that the trial court erred in holding that K Corp. failed to prove its claims. We review the trial court's factual findings for substantial evidence, and we review its conclusions of law de novo. (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935-936.)

Substantial evidence is evidence from which a reasonable trier of fact could have made the necessary findings. When considering whether there is substantial evidence in the record, we presume every reasonable inference the trier of fact could have made from the evidence; we do not reweigh the evidence or reevaluate the credibility of witnesses; and we do not reverse merely because the evidence could be reconciled with a contrary result. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

K Corp. contends that, even if Chicago Title Insurance Company performed all its obligations under the title insurance policy, it does not necessarily follow that none of the defendants have any liability, because there could be liability for negligence, breach of fiduciary duty, or breach of the escrow agreement that would be independent of any liability under the policy. Assuming this is correct, we nevertheless conclude that K

6.

Corp. has not demonstrated the trial court erred in finding no liability under those theories, each of which we will consider in turn.

## I.     *Negligence*

K Corp. maintains that Kenney and Chicago Title Company are liable for negligence because they prepared and recorded a deed that misidentified the grantor and therefore failed to transfer the property. K Corp. contends that Chicago Title Insurance Company is liable for negligence because the preliminary report it prepared misidentified the grantor, leading to the incorrectly prepared deed.

The elements of negligence are a duty to use due care, a breach of the duty, and damages proximately resulting from the breach. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.) An escrow holder has a duty toward the parties to an escrow to exercise reasonable skill and ordinary diligence in its employment. (*Wade v. Lake County Title Co.* (1970) 6 Cal.App.3d 824, 828.)

As a threshold matter, the record does not support the proposition that Chicago Title Insurance Company prepared the preliminary report. The preliminary report itself bears the name of Chicago Title Company, not Chicago Title Insurance Company, and K Corp.'s own position is that these are two separate entities. Because K Corp. makes no other argument about why Chicago Title Insurance Company would be liable for negligence, its argument on negligence as to that defendant fails.

It is undisputed that, in preparing the deed or causing it to be prepared, Kenney relied on the preliminary report provided to her by her employer. K Corp. cites no authority for the view that an escrow officer working as an employee of an escrow company can be liable for negligence as an individual for a loss that results from the officer's reliance on erroneous data provided to her by the company. As appellant, K Corp. has the burden of showing that Kenney's duty of care was not satisfied by her reliance on information provided by her employer. Is there authority for the view that her

7.

duty to use reasonable care required her to supplement her employer's research with her own? K Corp. has not shown anything of this kind.

K Corp. does point to evidence that Kenney knew of the existence of the Brainin Trust. Kenney received instructions to wire the proceeds of the sale to a bank account established for the benefit of the Sam Brainin Trust of September 23, 1993. K Corp. has not explained, however, why this would trigger a duty to carry out additional research to discover the first erroneous deed. Brainin might have wished the proceeds of the sale to go into his trust account regardless of whether the property was owned in the trust's name or Brainin's name as an individual.

K Corp. also relies on the fact that Kenney sent Brainin a document titled Escrow Acceptance Letter that included a request to "provide a copy of your trust agreement for my title department's review." (Capitalization omitted.) But Kenney testified that this language was boilerplate and she included it in the letter by mistake, not because she believed or had reason to believe the preliminary report was erroneous in attributing title to Brainin as an individual. The trial court was free to credit and rely on this testimony. K Corp. argues that the testimony "is simply not credible," and that Kenney must have suspected a problem with the title and then failed to follow up. Our role, however, is not to reweigh the evidence or substitute our own credibility determinations for those of the trial court. In any event, K Corp.'s assertion that Kenney "knew of the apparent problem with the title but either intentionally or negligently ignored it" is pure speculation. The fact that a document issued by Kenney made reference to a trust does not prove that Kenney knew or should have known the preliminary report was in error.

The same analysis applies to a Post-It Note that was found in the escrow file. The note says, "Dina [check] escrow file for trust info." K Corp. speculates that Kenney wrote this note to direct an assistant to investigate the title problem and "then neglected to follow up." In reality, there is no evidence that Kenney knew of the title problem and no evidence of why this Post-It Note was in the file.

8.

Finally, K Corp. has not demonstrated that the trial court was compelled by the evidence to find that Chicago Title Company breached its duty of care. What does a reasonable title company do when researching title and preparing a preliminary report? What did Chicago Title Company actually do in this instance? How did its actions fail to satisfy the standard of reasonable skill and ordinary diligence? K Corp. does not direct us to any evidence in the record relevant to these questions. It is not enough to show simply that the deed was erroneous or that the error in the deed resulted from the error in the preliminary report.

K Corp. does contend that Chicago Title Company is liable for Kenney's negligence through the doctrine of respondeat superior. As we have said, however, K Corp. did not demonstrate Kenney's negligence.

K Corp. also argues that Chicago Title Company was negligent because "it never ensured that [Kenney] received training regarding trusts and the manner in which property is held by a trust." K Corp. relies on the transcript of a deposition in which Kenney testified that she had not been trained on "the effect of title held by a trustee" and did not know "how a trust would hold title to a parcel of land …." Kenney explained at the deposition that, when she prepares a deed, she simply copies the name of the grantor as it appears in the preliminary report. K Corp. has not shown that an escrow company is negligent if it instructs an escrow officer to rely on title as shown in the company's preliminary report and does not provide the officer with training on the law of trusts. Further, at trial, Kenney testified that she did, in fact, receive training on the role of trusts in property ownership. Again, it is not our role to reweigh the evidence or resolve conflicts in the evidence.

For these reasons, we cannot reverse the trial court's conclusion that K Corp. did not prove negligence.

## II.     *Breach of fiduciary duty*

Similar considerations apply to K Corp.'s claim of breach of fiduciary duty.  K Corp. cites case law stating that an escrow holder has fiduciary duties to the parties to an escrow.  For instance, in *Spaziani v. Millar* (1963) 215 Cal.App.2d 667, the Court of Appeal held that the trial court erred in nonsuiting claims of negligence and breach of fiduciary duty by a seller of property against an escrow holder.  The court stated that an escrow holder has a fiduciary obligation "to disclose to his principal information acquired by him in the course of his employment .…" (*Id.* at p. 684.)  There was substantial evidence that the escrow holder learned that the terms of a loan obtained by the buyer materially departed from an agreement the buyer and seller had made but failed to disclose this to the seller.  The causes of action therefore should not have been rejected via nonsuit. (*Id*. at pp. 683-684.)  K Corp. has not, however, demonstrated that the trial court in this case was compelled to find a breach of fiduciary duty by the evidence in the record, as we will explain.

In arguing for reversal on the fiduciary-duty claim, K Corp. relies exclusively on Kenney's purported failures.  It does not claim that Chicago Title Company is liable based on anything other than Kenney's conduct, and it does not make any argument at all on this issue with respect to Chicago Title Insurance Company.

K Corp. says Kenney knew there was a trust because the preliminary report referred to the ineffective attempted transfer from Brainin to the trust on August 29, 2000; because she wired the sale proceeds to the trust account; and because her letter to Brainin included a reference to a trust.  K Corp. says Kenney should have told it about the trust's existence because Brainin's attempt to transfer the property to a trust was a "suspicious circumstance" possibly indicative of "fraud."  There is no evidence that Brainin ever did anything improper, however.  K Corp.'s argument seems to be that Kenney should have suspected fraud where none existed and should have warned K Corp. of her suspicion so that K Corp., investigating the nonexistent fraud, could

10.

fortuitously discover the true state of the property's title.  This fanciful reasoning is far from being a demonstration of breach of fiduciary duty.  Nothing here is comparable to the failure to disclose known facts in *Spaziani*.  The essence of this case is that the sale of the property was delayed because Chicago Title Company did *not* know an important fact—the existence of the defective June 2000 deed—in consequence of which title to the property remained vested in Brainin's trust and never was transferred to Brainin as an individual.  The record does not support K Corp.'s effort to represent the situation as one in which Kenney was proved to know something disadvantageous to a party and failed to disclose it.

In light of the above considerations, we hold that K Corp. has failed to demonstrate any error in the trial court's conclusion that there was no breach of fiduciary duty.

## III.    *Breach of contract*

K Corp. argues that the trial court erred in rejecting its claim that Chicago Title Company is liable for breach of contract because it failed to uphold the requirements of the escrow agreement.  An escrow holder has a duty to comply strictly with the escrow instructions provided by the parties.  "Upon the breach of an instruction by an escrow holder, the injured party acquires a cause of action for breach of contract."  (*Wade v. Lake County Title Co., supra*, 6 Cal.App.3d at p. 828.)  K Corp.'s position is that the escrow instructions required Chicago Title Company to record a deed conveying the property to the buyer, Kyle Carter Customer Service, and it failed to do this because the deed named the grantor incorrectly.

K Corp. relies on paragraph 12D of the joint escrow instructions that were included in the purchase agreement form employed by the buyer and seller.  Section 12D states:

> "At Close of Escrow, Buyer shall receive a grant deed conveying title ….
> Title shall vest as designated in Buyer's supplemental escrow instructions.

11.

THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES.  CONSULT AN APPROPRIATE PROFESSIONAL."

Defendants cite paragraphs 12A and 12B of the escrow instructions and argue that paragraph 12D must be understood in light of them.  Those paragraphs state:

"A.     Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title.  Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14.

"B.     Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except:  (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing."

In defendants' view, the combined effect of paragraphs 12A, 12B, and 12D is that an escrow holder can fulfill its duty to provide the buyer with a deed by providing one in accordance with the preliminary report and presenting the preliminary report to the buyer for the buyer's inspection, with the warning that the buyer takes title subject to various encumbrances whether of record or not.  Defendants cite no authority in support of this interpretation, and K Corp. cites none against it.

Defendants have the better argument.  The parties' dispute in this case arises from an incomplete title search that resulted in an incorrect preliminary title report, leading to an incorrectly prepared deed.  Title insurance policies cover title problems like this, as happened in this case.  The escrow instruction form utilized by the parties here included (in paragraph 12E) a requirement that the buyer receive a specified type of title insurance.  If, as K Corp. argues, the meaning of the instructions is that the escrow holder is liable for losses arising from title problems that cause the recorded deed not to pass title to the buyer, then a contract claim against the escrow holder would always be available when

this form is used, in addition to the buyer's recourse under the insurance policy, even if the failure to detect the title problem was not the escrow holder's fault. We consider it unlikely that the instructions would include a requirement to obtain title insurance if the intent were for an uninsured liability on the part of the escrow holder to exist whenever a grant deed is ineffective because of a title problem.

For these reasons, the trial court did not err in concluding that Chicago Title Company's failure to provide an effective grant deed failed to establish a breach of contract.

## IV.    *Damages*

K Corp. argues that the trial court erred in finding that damages were not proved. Because we hold that K Corp. has not established error on the issue of liability, we need not discuss damages.

## *DISPOSITION*

The judgment is affirmed. Defendants are awarded costs on appeal.

_____

Smith, J.

WE CONCUR:

_____

Kane, Acting P.J.

_____

Poochigian, J.

13.